UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-14050-BLOOM

MICHAEL CORSETTI,

    Petitioner,

v.

SEC'Y, DEP'T OF CORR., *et al.*,

    Respondent.

_____/

## **ORDER**

**THIS CAUSE** is before the Court on Petitioner Michael Corsetti's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, ECF No. [1], filed on January 15, 2021.[1] Petitioner challenges the constitutionality of his convictions and sentences in Okeechobee County Case No 47-2013-CF-000470-A. *See generally id.*

Respondent filed a Response to Order to Show Cause, ECF No. [15], and an Appendix to the Response, ECF No. [15-1], with attached exhibits, ECF No. [15-2]. Respondent also filed a Notice of Filing Transcripts, ECF No. [16], with attached transcripts, ECF Nos. [16-1, 16-2]. Petitioner thereafter filed a Reply, ECF No. [17]. The Court has carefully considered the Petition, all opposing and supporting submissions, the record in this case, the applicable law, and is otherwise fully advised. For the reasons set forth below, the Petition is denied.

---

[1] "Under the prison mailbox rule, a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing." *Williams v. McNeil*, 557 F.3d 1287, 1290 n.2 (11th Cir. 2009) (quotation marks and citations omitted).

## I. BACKGROUND

On August 23, 2013, Petitioner was arrested and charged with three counts of sale or delivery of oxycodone and three counts of possession with intent to sell or deliver oxycodone. ECF No. [1] at 2, 4.[2] Throughout the pretrial and trial period, Petitioner had several attorneys. From the time of his arrest to September 24, 2014, Brandie Tindall and Stanley Glen of the Office of the Public Defender for the 19th Judicial Circuit represented Petitioner. *Id.* at 22. On September 25, 2013, John Cook of the Office of Regional Conflict Counsel was appointed to represent Petitioner. *Id.* Mr. Cook served as counsel for Petitioner for four months until Donald Chinquina, also with the Office of Regional Conflict Counsel, took over representation. *Id.* Mr. Chinquina represented Petitioner from January 17, 2014 until May 22, 2014 when Petitioner hired private attorney Joshua Deckard. *Id.* Mr. Deckard served as counsel through the sentencing hearing. *Id.*

At a pretrial status hearing on April 13, 2015, the trial court inquired whether there had been any plea offers and, if so, whether the offer had been rejected. ECF No. [16-1] at 9. Assistant State Attorney Robert Moeller informed the trial court that, according to his notes, "there was an offer of 4 years straight in the Department of Corrections on all cases" and that offer "was either given or expired on April 16, 2014." *Id.* Neither Petitioner nor current counsel, Mr. Deckard, were aware of any prior plea offers. *Id.* Mr. Moeller informed the court that at the time the offer was made, Mr. Chinquina was serving as counsel for Petitioner. *Id.* at 11. He also stated that the plea offer "probably still isn't open." *Id.* at 12.

On April 30, 2015, a jury trial commenced on only one count of sale or delivery of oxycodone. *Id.* at 5; ECF No. [16-2] at 149. The jury returned a verdict of guilty as charged. ECF No. [16-2] at 345. At sentencing, the trial court adjudicated Petitioner as a habitual felony offender

---

[2] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

and sentenced him to 15 years' imprisonment. *Id.* at 411-15. In exchange for a plea of no contest on the remaining counts, the trial court sentenced Petitioner to concurrent 15-year sentences. *Id.* at 423.

***Direct Appeal and Collateral Proceedings***. Petitioner filed an appeal with the Fourth District Court of Appeal ("Fourth DCA"). ECF No. [15-2] at 2-30. The Fourth DCA per curiam affirmed the convictions and sentences. *Corsetti v. State*, 254 So. 3d 963 (Fla. 4th DCA 2018) (table).

Petitioner filed a *pro se* Motion for Postconviction Relief under Florida Rule of Criminal Procedure 3.850 ("Rule 3.850 Motion"). ECF No. [15-2] at 61-95. In the Rule 3.850 Motion, Petitioner raised one ground for relief: trial counsel was ineffective for failing to convey the State's favorable four-year plea offer before it expired. *Id.* at 64.

On September 13, 2019, the trial court held an evidentiary hearing on the Rule 3.850 Motion. ECF No. [16-2] at 5-58. At the evidentiary hearing, attorney Adrienne Bucchi represented Petitioner. *Id.* at 1. The trial court heard testimony from Petitioner, Ms. Tindall, Mr. Cook, Mr. Chinquina, and Mr. Deckard. *Id.* at 5-58. On September 20, 2019, the trial court entered a written order denying Petitioner's Rule 3.850 Motion. ECF No. [15-2] at 97-100. Following the denial of Petitioner's motion for rehearing, *id.* at 102-06, Petitioner appealed to the Fourth DCA. *Id.* at 109-19. The Fourth DCA per curiam affirmed the trial court's denial. *Corsetti v. State*, No. 4D19-3283, 2020 WL 736691 (Fla. 4th DCA 2020) (table).

***The § 2254 Proceedings***. In the instant Petition, Petitioner challenges his convictions and sentences under 28 U.S.C. § 2254. Nominally, Petitioner raises only one claim for relief. See ECF No. [1]. Liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Petitioner raises a separate basis for relief within the Petition. Accordingly, the Court considers the following two claims for relief: (Claim One) trial counsel was ineffective for failing to convey a favorable four-

year plea offer from the State resulting in a harsher sentence after a loss at trial in violation of Petitioner's constitutional rights; and (Claim Two) Assistant State Attorney Moeller's refusal to convey the four-year plea offer to Petitioner was an act of prosecutorial misconduct that denied Petitioner due process and a right to fair legal proceedings. ECF No. [1] at 8, 17. The Court considers each claim, addressing Claim Two first.

## II. LEGAL STANDARD

*Deference Under § 2254*. A court's review of a state prisoner's federal habeas corpus petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). *See Abdul–Kabir v. Quarterman*, 550 U.S. 233, 246 (2007). "The purpose of [the] AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction." *Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016) (alteration added; citation and quotation marks omitted). This standard is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (citation and quotation marks omitted).

The AEDPA provides that a federal court may not grant a habeas petitioner relief on any claim adjudicated on the merits in state court unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see also Rimmer v. Sec'y, Fla. Dep't of Corr.*, 876 F.3d 1039, 1053 (11th Cir. 2017) (citing 28 U.S.C. § 2254(d)).

A state court decision is "contrary to" established Supreme Court precedent when it (1) applies a rule that contradicts the governing law set forth by the Supreme Court; or (2) confronts a set of facts materially indistinguishable from a decision of the Supreme Court and

nevertheless arrives at a result different from Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" of clearly established federal law is different from an incorrect application of federal law. *Id.* at 410 (citation omitted). Consequently, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (alteration added; citation and quotation marks omitted). If the last state court to decide a prisoner's federal claim provides an explanation for its merits-based decision in a reasoned opinion, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) (citations omitted).

Even summary rejection of a claim, without explanation, qualifies as an adjudication on the merits, warranting deference. *See Meders v. Warden, Ga. Diagnostic Prison*, 911 F.3d 1335, 1351 (11th Cir. 2019). If the state court's merits determination is unaccompanied by an explanation, federal courts should "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. Furthermore, a decision is still an adjudication on the merits when it "addresses some but not all of a defendant's claims." *Johnson v. Williams*, 568 U.S. 289, 298 (2013).

In any event, a federal district court is authorized to deny a claim for federal habeas corpus relief when the claim is subject to rejection under *de novo* review, regardless of whether AEDPA deference applies. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) (holding federal courts may deny petitions for writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, as a habeas petitioner will not be entitled to habeas

5

relief if his claim is rejected following *de novo* review); *Connor v. GDCP Warden*, 784 F.3d 752, 767 (11th Cir. 2015).

Again, the AEDPA "imposes a highly deferential standard for evaluating state-court rulings . . . , and demands that state-court decisions be given the benefit of the doubt[.]" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (alteration added; quotation marks, citations, and footnote call number omitted). Deferential review under § 2254(d) is generally limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011).

***Ineffective Assistance of Counsel***. The Sixth Amendment to the United States Constitution guarantees criminal defendants the right to assistance of counsel during criminal proceedings. *See Strickland v. Washington*, 466 U.S. 668, 684-85 (1984). When assessing counsel's performance under *Strickland*, the Court employs a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. "[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance[.]" *Burt v. Titlow*, 571 U.S. 12, 20 (2013) (alterations added; citation omitted). "Where the highly deferential standards mandated by *Strickland* and [the] AEDPA both apply, they combine to produce a doubly deferential form of review that asks only 'whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.'" *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1323 (11th Cir. 2013) (alteration added; quoting *Harrington v. Richter*, 562 U.S. 86, 105 (2011)).

To prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687-88; *see also Harrington*, 562 U.S. at 104.

To establish deficient performance, the petitioner must show that, considering all circumstances, "counsel's conduct fell 'outside the wide range of professionally competent assistance.'" *Cummings v. Sec'y for Dep't of Corr.*, 588 F.3d 1331, 1356 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 690). Strategic choices made after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *See Strickland*, 466 U.S. at 690-91. The court's review of counsel's performance should focus on "not what is possible or 'what is prudent or appropriate, but only [on] what is constitutionally compelled.'" *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (alteration added; footnote call number omitted; quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). Counsel is not ineffective for failing to raise non-meritorious issues, *see Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (citation omitted); nor is counsel required to present every non-frivolous argument, *see Dell v. United States*, 710 F.3d 1267, 1282 (11th Cir. 2013) (citation omitted).

Regarding the prejudice component, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694 (alteration added). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* A court need not address both prongs of *Strickland* if the defendant makes an insufficient showing on one of the prongs. *See id.* at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013) (citations omitted).

### III. DISCUSSION

#### A. Timeliness, Exhaustion, and Procedural Default of Claim Two

Respondent does not dispute that the Petition is timely filed. ECF No. [15] at 6. With regard to exhaustion, however, Respondent argues that Claim Two is unexhausted but does not dispute the Claim One is properly exhausted. *Id.* at 6-7. In Claim Two, Petitioner argues that Assistant

7

State Attorney Moeller's refusal to convey the four-year plea offer was an act of prosecutorial misconduct that violated his federal constitutional rights. ECF No. [1] at 17-20.

Petitioner did not raise Claim Two in his Rule 3.850 Motion. ECF No. [15-2] at 64-69. Instead, Petitioner argues that during the evidentiary hearing on the Rule 3.850 Motion Claim Two was exhausted. In support, Petitioner cites postconviction counsel's reference to "prosecutorial misconduct" in her closing argument at the Rule 3.850 Motion evidentiary hearing. ECF No. [1] at 17. In its order denying the Rule 3.850 Motion, the trial court noted that the Petitioner raised only one ground. ECF No. [15-2] at 98. The order further clarified:

> [t]he Assistant State Attorney's intent to make an offer [was] not the issue. In any criminal prosecution, the State Attorney's Office is under no obligation to make any plea offer. Whether or not the plea offer was conveyed to defense counsel and whether or not they informed the Defendant of the offer is the issue.

*Id.* at 99 (alterations added).

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies . . . , thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (alteration added; quotation marks and citations omitted). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (quotation marks omitted and citations omitted); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." (alteration added)).

First, Petitioner did not raise Claim Two in his Rule 3.850 Motion. ECF No. [15-2] at 61-70; *see* ECF No. [1] at 9 ("This claim was the sole ground raised in the Petitioner's February 21, 2019 Rule 3.850 Motion for Postconviction Relief[.]" (alteration added)). Counsel's reference to

8

"prosecutorial misconduct" in her closing arguments does not constitute fair presentation of the claim in the state forum. Moreover, to the extent Petitioner intended to raise a prosecutorial misconduct claim, such a claim should have been raised on direct appeal. The issue regarding the expired plea offer first arose prior to the start of the trial. Any issue Petitioner had regarding the conduct of the Assistant State Attorney could have been raised at that time.

In Florida, claims which could have been raised on direct appeal, but were not, are considered abandoned and procedurally barred from collateral review. *See Sullivan v. Wainwright*, 695 F.2d 1306, 1310, 1310 nn. 4, 6 (11th Cir. 1983) (citations omitted). "[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile." *Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) (alteration added; citation omitted). "[A]bsent a showing of cause for and actual prejudice from the default[,]" *id.* at 1302 (alteration added; citing *Wainwright v. Sykes*, 433 U.S. 72, 87, 97 (1977)), a petitioner procedurally barred from bringing a claim in state court is said to have procedurally defaulted the claim.

Because the basis for Claim Two was clearly available to Petitioner on direct appeal, and he cannot return to the state court in order to exhaust it, Claim Two is procedurally defaulted. *See Ivy v. Fla. Dep't of Corr.*, 543 F. App'x 923, 927-28 (11th Cir. 2013) ("[The petitioner's] failure to exhaust his claim resulted in a procedural default because 'it is apparent that the Florida courts would now refuse to hear this claim[.]'" (alterations added; quoting *Smith v. Sec'y, Dep't of Corr.*, 572 F.3d 1327, 1342 (11th Cir. 2009)).

Federal habeas review of a procedurally defaulted claim is barred unless the petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (citations omitted). A petitioner can

9

show cause to excuse the procedural default by alleging that some objective factor, external to the defense, impeded his effort to raise the claim properly in the state court. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999). To show prejudice, a petitioner must demonstrate that "the errors at trial actually and substantially disadvantaged his defense so that he was denied fundamental fairness." *McCoy v. Newsome*, 953 F.2d 1252, 1261 (11th Cir. 1992) (citing *Murray*, 477 U.S. at 494). The allegations of cause and prejudice must be factually specific, not conclusory. *See Harris v. Comm'r, Ala. Dep't of Corr.*, 874 F.3d 682, 691 (11th Cir. 2017) (citation omitted). No such showing has been made here. *See* ECF No. [1] at 17-20; ECF No. [17] at 3-4.

### B. Claim One

In Claim One, Petitioner argues that trial counsel was ineffective for failing to convey a favorable four-year plea offer from the State resulting in a harsher sentence after a loss at trial in violation of Petitioner's constitutional rights. ECF No. [1] at 8-20. Petitioner recounts the testimony received at the Rule 3.850 evidentiary hearing on the issue and argues that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. *Id.* at 16-17. Petitioner argues that the evidence showed that prior to trial, a plea offer of 4 years to resolve all pending charges existed and that testimony from all defense counselors "showed that no defense counsel ever received this plea offer from the State." *Id.* at 17.

"Determining the credibility of witnesses is the province and function of the state courts, not a federal court engaging in habeas review." *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011) (per curiam). "Federal habeas courts have 'no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.'" *Id.* (quoting *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983)). Consistent with these principles, absent "clear and convincing evidence," courts have "no power on federal habeas

review to revisit the state court's credibility determinations." *Bishop v. Warden, GDCP*, 726 F.3d 1243, 1259 (11th Cir. 2013) (citations omitted); *accord Jenkins v. Comm'r, Ala. Dep't of Corr.*, 963 F.3d 1248, 1272 (11th Cir. 2020).

Ineffective assistance of counsel claims within the plea bargaining context are governed by *Strickland*. *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citation omitted). "Under [*Strickland*'s] two-part test, a petitioner asserting a claim of ineffective assistance of counsel must demonstrate both deficient performance and prejudice—that counsel's performance fell below an objective standard of reasonableness and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Gissendaner v. Seaboldt*, 735 F.3d 1311, 1317 (11th Cir. 2013) (alteration added; citations and internal quotation marks omitted). In *Frye*, the Court specifically held that counsel has a "duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," and that, in general, where such an offer is not communicated to the defendant, counsel "[does] not render the effective assistance the Constitution requires." *Frye*, 566 U.S. at 145 (alteration added); *In re Perez*, 682 F.3d 930, 932 (11th Cir. 2012) (per curiam).

At the evidentiary hearing on the Rule 3.850 Motion, Petitioner offered his own testimony into the record. He testified that the first time he learned of any plea offer was when Mr. Moeller informed the trial court at the April 13, 2015 status hearing that a four-year plea offer was made but rejected. ECF No. [16-2] at 11. Petitioner testified that at the time the plea offer was extended he was represented by Mr. Chinquina. *Id.* at 10. If Mr. Chinquina had informed him of the State's plea offer, Petitioner testified that he would have accepted it. *Id.* at 12-13.

Mr. Chinquina testified that when he took over the case there was a letter in the file dated September 16, 2013 indicating that there were currently no plea offers. *Id.* at 32. He testified that Petitioner never asked him to attempt to negotiate a plea offer with the State and that the State

11

never approached him with a plea offer. *Id.* at 34-36. An email chain among Mr. Chinquina, Mr. Deckard, and the State, dating back before Petitioner was sentenced, was admitted. *Id.* at 36-38. Mr. Chinquina testified that the email, and a follow-up phone call from Mr. Moeller, were the first time he learned of the four-year offer. *Id.* at 38. Mr. Moeller reached out to Mr. Chinquina and asked him to testify at the sentencing hearing regarding the four-year plea offer. Mr. Chinquina stated that Mr. Moeller wanted him to testify at sentencing "either that [he] was never told there was a four year plea offer or that [he] was [told] and [he] conveyed it," however, Mr. Chinquina informed Mr. Moeller that "he never did convey an offer to [Mr. Chinquina]. Never once did he convey a four year plea offer." *Id.* at 36 (alterations added). In describing the contents of the email, he explained that "Mr. Moeller sent [him the email] asking about this four year offer in which he indicate[d] he wasn't even sure whether he conveyed it himself or not." *Id.* at 38 (alterations added).

Following the evidentiary hearing, the trial court denied Petitioner's claim finding that counsel's performance was not deficient, and that Petitioner did not suffer any prejudice. ECF No. [15-2] at 99-100. In its written order, the trial court recounted that each defense attorney "testified that they did not receive any plea offers from the Assistant State Attorney prosecuting the case." ECF No. [15-2] at 99. The trial court stated that it found the testimony of each defense attorney to be "credible and reliable." *Id.* at 98. Regarding the email chain admitted into evidence, the trial court determined that it "established that the prosecutor most likely never conveyed the plea offer to any of the Defendant's attorneys." *Id.* at 99. Based upon the evidence introduced at the evidentiary hearing, the trial court concluded that "defense counsel, specifically, Mr. Chinquina, was never informed of any plea offer from the prosecuting attorney." *Id.*

The trial court's rejection of Petitioner's claim was reasonable. Petitioner alleged that he found out about the plea offer for the first time days before trial. In his Rule 3.850 Motion, he

12

theorized that Mr. Chinquina, counsel, at the time the alleged plea offer was extended and rejected, failed to convey the plea offer to him. Petitioner's only evidentiary support at the hearing was his own testimony. The trial court's determination that Mr. Chinquina's testimony and the other defense attorneys' testimonies were "accurate, credible and reliable" was reasonable. In short, Petitioner has not met his burden. The state court's finding that Mr. Chinquina was not ineffective is entitled to deference. Claim One is denied.

## IV. EVIDENTIARY HEARING

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011). "[I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (alteration added); *see also Jones v. Sec'y, Fla. Dep't of Corr.*, 834 F.3d 1299, 1318-19 (11th Cir. 2016). Here, the issues presented can be resolved based on the record before the Court. Indeed, because the Court can "adequately assess [Petitioner's] claim[s] without further factual development[,]" Petitioner is not entitled to an evidentiary hearing. *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003) (alterations added).

## V. CERTIFICATE OF APPEALABILITY

A prisoner seeking to appeal a district court's final order denying his or her petition for writ of habeas corpus has no absolute entitlement to appeal; rather, in order to do so, they must obtain a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). Where the district court rejects a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Upon consideration of the record, the Court concludes there is no basis to issue a certificate of appealability.

### VI. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Petitioner Michael Corsetti's Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254, **ECF No. [1]**, is **DENIED**.

2. No certificate of appealability shall issue.

3. To the extent not otherwise disposed of, any pending motions are **DENIED AS MOOT** and all deadlines are **TERMINATED**.

4. The Clerk of Court is directed to **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, on April 21, 2022.

_____
**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

Michael Corsetti, *Pro Se*
# 632336
Marion Correctional Institute
Inmate Mail/Parcels
P.O. Box 32663
Lowell, FL 32663